**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ZACHARY A. WITTE**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY VOLTAIRE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1303-CR-104 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**APPEAL FROM THE ALLEN SUPERIOR COURT**
The Honorable Wendy W. Davis, Judge
Cause No. 02D06-1207-FD-1015

**September 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

Gregory Voltaire appeals his class D felony sexual battery convictions and his class B misdemeanor battery sentence. We affirm his convictions but reverse and remand on a sentencing issue.

FACTS AND PROCEDURAL HISTORY

In August 2011, eighteen-year-old D.J. interviewed with Voltaire for a job at his clothing store, Voltaire Designs. At the end of the interview, Voltaire told her she could start the next day.

Voltaire called D.J. shortly after the interview and asked her to come back. When she got there, he told her he liked his employees to wear clothing from his store. D.J. picked out a shirt and some jeans but then realized she did not have enough money for the jeans. Voltaire said they could "work something out." Tr. p. 107. D.J. declined and said she could pay for the jeans the next day, but Voltaire again insisted they could "work something out." *Id.* D.J. believed Voltaire was asking for sex. *Id.* at 121-22.

When D.J. went to put the jeans back, Voltaire pushed her into his office, locked the door behind them, and subjected her to several unwanted sexual touchings. D.J. managed to get away only after her cell phone rang and a customer entered the store.

Sixteen-year-old C.Y. worked at Voltaire Designs from August through October 2011. As with D.J., Voltaire told C.Y. he preferred the employees to wear clothing from the store. He pointed out a bra and underwear and asked C.Y. to model them for him. C.Y. did not try them on. She took them to the back room and emerged a little later, telling Voltaire they did not fit.

2

During C.Y.'s employment, Voltaire repeatedly touched her in ways that made her uncomfortable. For example, he subjected her to long hugs, pressed his erections against her body, and tried to get her to touch his penis. These advances scared C.Y., and she finally decided she could not take it anymore when Voltaire told her that "we can't help what happens in the store" and that "humans can't control themselves" and then "smacked [her] butt" as she was leaving at the end of her shift. *Id.* at 171, 175, 176. C.Y. walked out and never returned.

A jury found Voltaire guilty of two counts of class D felony sexual battery and one count of class B misdemeanor battery. The trial court sentenced him to one and a half years on the first D felony, with half a year suspended to probation; one and a half years on the second D felony, with one year suspended to probation; and one year suspended to probation for the B misdemeanor. The felonies were ordered to be served consecutively with each other but concurrent to the misdemeanor.

## ISSUES

Voltaire raises two issues: (1) whether the evidence is sufficient to sustain his class D felony sexual battery convictions and (2) whether his one-year sentence for class B misdemeanor battery exceeds the maximum term authorized by statute.

## DISCUSSION AND DECISION

### I. SUFFICIENCY OF THE EVIDENCE

As to both victims, Voltaire contends that the State did not sufficiently prove that they were compelled to submit to the touching by force or the imminent threat of force.

3

When reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Delarosa v. State*, 938 N.E.2d 690 (Ind. 2010). We affirm if the probative evidence and reasonable inferences supporting the verdicts could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Voltaire of the class D felony sexual batteries, the State had to prove beyond a reasonable doubt that he touched D.J. and C.Y., with intent to arouse or satisfy his or their sexual desires, when they were compelled to submit to the touching by force or the imminent threat of force. *See* Ind. Code § 35-42-4-8(a)(1) (1998). The presence or absence of forceful compulsion is to be determined from the perspective of the victim, not the assailant. *McCarter v. State*, 961 N.E.2d 43 (Ind. Ct. App. 2012), *trans. denied*.

The evidence regarding D.J. shows that Voltaire pushed her into his office and locked the door. D.J. struggled and pushed him away, telling him no and to get off of her, but he kept grabbing her and "pull[ing her] back onto him." Tr. p. 109. At one point, he grabbed her neck in a way that made her feel he would choke her, and she feared he would hurt or kill her. *Id.* at 111. Voltaire unbuttoned her pants, put his hand inside her shirt, and rubbed his erection against her bottom. *Id.*

The evidence regarding C.Y. shows she felt compelled to submit to Voltaire's persistent advances over the course of several months. He subjected her to uncomfortable, lingering hugs where "he wouldn't let go." *Id.* at 171. When C.Y. tried to get away from his grip, he would exert force to stop her. *Id.* at 172. He kissed her during one hug but only got part of her lip because she moved away. *Id.* at 170. On

4

fifteen to twenty different occasions, Voltaire hugged or touched C.Y. where she could feel his erection against her body. *Id.* at 159. Once when she was sitting down, Voltaire got on his knees between her legs, grabbed her legs, asked if her boyfriend ever performed oral sex on her, and said he could do it better. *Id.* at 156. On another occasion, he grabbed her arm and tried to put her hand on his penis. *Id.* at 162-63. On yet another occasion, he tried to give her a massage and then tried to get on top of her and "straddle" her. *Id.* at 172-73. C.Y. tried to stop him, but he "forcefully continued" until she was able to push him off. *Id.* at 173. C.Y. thought Voltaire was a "predator" and was scared of him. *Id.* at 182.

Voltaire argues that there was not enough evidence that D.J. and C.Y. submitted out of fear. While fear may be evidence of force or threat of force, fear is not an element of sexual battery, nor is it a prerequisite to proving force or imminent threat of it. *McCarter*, 961 N.E.2d at 46.

We conclude the evidence is sufficient to show that D.J. and C.Y. were compelled to submit to Voltaire's sexual touchings by force or the imminent threat of force.

## II. MISDEMEANOR BATTERY SENTENCE

Voltaire next contends his one-year sentence suspended to probation for the class B misdemeanor battery violates Indiana Code section 35-50-3-3 (1977), which provides in relevant part, "A person who commits a Class B misdemeanor shall be imprisoned for a fixed term of not more than one hundred eighty (180) days." The State concedes Voltaire's sentence improperly exceeds the statutory maximum for a class B misdemeanor but notes the court's authority to place him on probation for one year if any

5

part of his misdemeanor sentence is suspended. *See* Ind. Code § 35-50-3-1(b) (2002).

We therefore reverse the class B misdemeanor sentence and remand with instructions to

enter a sentence complying with our misdemeanor sentencing statutes.

CONCLUSION

We affirm in part, reverse in part, and remand with instructions.

VAIDIK, J., and BROWN, J., concur.